BOGGS, Circuit Judge.
This case is an appeal from a proposed § 1983 class action brought against Lexington-Fayette Urban County Government (LFUCG) and a number of its former officials. Plaintiffs allege that LFUCG and its former officials failed to report sexual abuse of minors by Ronald Berry, who ran a publicly, funded summer program called Micro-City Government, and that the defendants continued to fund Micro-City despite knowledge of Berry’s abuse. This case is one of four class actions filed since 1998 against LFUCG and various combinations of its former officials. The appeal is taken from three interlocutory orders issued by the district court while the case was on remand from this court. We affirm.

Factual and Procedural History

In this case, Keith Guy, Sr., the named plaintiff, and a proposed class of 159 members claim that they were abused by Ronald Berry, the former head of Micro-City Government. Micro-City Government was a summer program for disadvantaged youth in Lexington, Kentucky, operated for almost thirty years and funded in part by LFUCG. Ronald Berry, the former head of Micro-City, is currently incarcerated on twelve counts of third-degree sodomy for abuse of minors that took place during his time at Micro-City. Plaintiffs allege that Berry abused minors over the period of 1969 to 1996. LFUCG and various numbers of its officials have been the target of several class actions by this and similar putative classes. The complex procedural history of this case is as follows.
On October 15, 1998, four victims (Keith Guy Sr., Barry Demus Jr., Octavius Gillis, and Christopher Williams) — the same four *12 who filed criminal charges against Berry— filed the putative class action currently on appeal (Guy). The complaint named only LFUCG as a defendant. The named plaintiffs, with the exception of Guy, settled in 2000, prior to any ruling on class certification. Two additional victims, Craig Johnson and David Jones, then moved the court to provide notice of the dismissal to the putative class pursuant to Federal Rule of Civil Procedure 28(e).[1] The district court denied that motion, reasoning that the lawsuit had brought so much publicity that anyone who was going to come forward to join the suit would have already done so. Within two years of the ruling, however, nearly 100 class members came forward. Guy, Johnson, and Jones appealed. Johnson and Jones settled, leaving Guy as the sole named plaintiff appealing the denial of Rule 23(e) notice.
On May 3, 2000, a second class action was filed by Johnson, Jones, and seven John Does, naming LFUCG and ten former LFUCG officials as defendants. Doe v. LFUCG, No. 00-166-KSF (Doe I). Two years later, the named plaintiffs settled and Doe I was dismissed. Rule 23(e) notice was neither requested nor given to putative class members.
On September 25, 2002, a third class action was filed by thirty-eight John Does, naming LFUCG and fourteen individual defendants — including the ten named in Doe I—as defendants. Doe # 1-33 v. LFUCG, No. 02-439-JMH (Doe I). The suit was dismissed in 2003 because plaintiffs’ claims were time-barred.
A fourth class action was filed by fifty-eight new John Does. Doe # 1-44 v. LFUCG, No. 03-12-JMH (Doe II). This case was also dismissed because plaintiffs’ claims were time-barred.
Concurrent with their filing of Doe III, its fifty-eight plaintiffs moved to intervene in Guy and Doe I pursuant to a 60(b)(4) motion,[2] arguing that the judgments in Guy and Doe I were void because Rule 23(e) notice was not served on the class members and their due-process rights were thereby violated. This action was called Doe v. Miller, No. 00-166-KSF. The district court denied the motion. Plaintiffs appealed this denial, along with other issues.
On May 5, 2005, in a consolidated appeal of Guy, Doe I, and Doe v. Miller, the Sixth Circuit vacated the judgment in Guy. Doe v. Lexington-Fayette Urban Cnty. Gov’t, 407 F.3d 755, 764 (6th Cir.2005), cert. denied, 546 U.S. 1094, 126 S.Ct. 1069, 163 L.Ed.2d 862 (2006). The court decided that the district court abused its discretion by refusing to provide Rule 23(e) notice to absent class members in Guy and Doe I. The court stated that “vacating the Guy order reaches the equitable result of allowing the Does to go forward with their case while preserving the settlement reached by the Doe I parties.” Ibid. The court held that, in reopening the Guy case, the *13 statutes of limitations would be tolled from the time Guy was filed for plaintiffs whose statutes of limitations had not already expired by the time Guy was filed, stating “[b]ecause Guy will be reopened ... the various statutes of limitation will be considered as tolled from and after the filing of Guy.” Ibid. (citing Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 353-54, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983)). The Sixth Circuit did not, however, make any ruling as to when the statutes of limitations began to run for any Guy plaintiffs. It also did not make any rulings as to whether any other estoppel or tolling doctrines should be applied to the statute of limitations. The court did not vacate the judgment in Doe I because the settlement in Doe I was contingent on the dismissal of the class action and the court declined to disturb that settlement. Ibid.
On remand, the district court divided plaintiffs into two separately represented groups: the “Doe Plaintiffs” and the “Roe plaintiffs.” In the amended complaint of the “Doe plaintiffs,” fourteen individuals were named as defendants, along with LFUCG. The individual defendants moved to dismiss the amended complaint, arguing that the claims against them were barred by the statute of limitations.
In Order # 255, the district court granted defendants’ motion to dismiss, ruling that the statute of limitations on claims against LFUCG began to run at the time each plaintiff was injured by Berry. If the plaintiff was a minor at that time, the statute began to run when he reached the age of eighteen. Ky.Rev.Stat. Ann. § 413.170. All of the statutes of limitations were one year. Any statutes of limitations that had not run by the time Guy was filed were tolled until the time Guy was reopened, but only for claims against LFUCG, the only defendant in the Guy case. Similarly, claims against individual defendants were tolled from the time of filing of Doe I. The court allowed individual plaintiffs to move for clarification of the order if they believed their claims were not time-barred.
The district court clarified its order in Order # 382, holding that four plaintiffs were not time-barred with respect to their claims against LFUCG. Three of the four plaintiffs were also not time-barred with respect to their claims against the individual defendants initially named in Doe I, and were able to proceed against those defendants.
The pertinent dates as to the timeliness of the claims of the four plaintiffs are:
Name Date of Birth Date Statute of LFUCG Individual Defendants Limitations Expired (Guy filed (Doe I filed Oct. 15,1998) May 3,2000)
John Doe #24 6/23/1981 6/24/2000 Not barred Not barred
John Doe #33 10/13/1983 10/14/2002 Not barred Not barred
John Doe #39 6/5/1981 6/6/2000 Not barred Not barred
John Doe #45 11/12/1979 11/12/1998 Not barred Barred
In a third order, Order #411, the district court denied class certification based on lack of numerosity and lack of commonality of legal and factual issues.
On appeal, plaintiffs contest Orders #255 and #411: the order granting the individual defendants’ motions to dismiss and the order denying class certification. They argue that the statute of limitations should not have begun to run at the time of Berry’s abuse, but at the time they learned of LFUCG’s role in failing to report and continuing to fund Berry’s activities. In the alternative, they argue that, *14 even if the statute did begin running at the time of injury, tolling doctrines should operate to preserve their claims. Finally, they argue that the district court erred in denying class certification.
Defendants, as cross-appellants, contest the portions of Order #255 that allow tolling of claims against the Doe I defendants, and contest Order # 382, which allows three plaintiffs to go forward with claims against the individual defendants. Defendants argue that the district court’s order was a misapplication of the class-action tolling doctrine, which requires that a class member’s claims be tolled from the time of filing a class action.
This court has appellate jurisdiction over the district court’s Orders # 255 and # 382 based on 28 U.S.C. § 1292(b), which allows for discretionary review of interlocutory orders in civil actions. The Sixth Circuit granted permission for plaintiffs and defendants to appeal the orders in this case.
This court has appellate jurisdiction over the district court’s Order # 411, regarding class-certification, based on Federal Rule of Civil Procedure 23(f).
We disagree with the plaintiffs’ and defendants’ attacks on the district court’s orders. Accordingly, we affirm Order # 255, Order # 382, and Order #411.
Order # 255
Three interlocutory orders in this putative class action were certified for appeal in this court. The first order, Order # 255, is addressed in this section.
Order #255 held that the statute of limitations for each class member began to run at the time the individual was injured by Berry, unless the individual was a minor at that time, in which case the statute began to run when he turned eighteen. Ky.Rev.Stat. Ann. § 413.170. Order #255 also held that the applicable statute of limitations was one year. Order #255 declared that plaintiffs-appellants’ claims were time-barred because Guy and Doe I were filed more than a year after both (a) the last injuries occurred and (b) the class members reached eighteen. The order left room for later clarification if any plaintiffs could prove that they had turned eighteen less than a year before the action was filed. The order was indeed later clarified (in Order # 382, which defendants dispute on appeal) to allow four plaintiffs to go forward with claims.
Plaintiffs argue that the district court erred in holding that their claims were time-barred. They make a number of arguments, related to commencement, estop-pel, and tolling of the statute of limitations. We examine these arguments in turn.
We review a motion to dismiss on statute-of-Iimitations grounds de novo. United States v. Grenier, 513 F.3d 632, 636 (6th Cir.2008).
A
Plaintiffs do not dispute the district court’s holding that § 1983 claims are governed by state personal-injury statutes of limitations, which in Kentucky are one year. Collard v. Ky. Bd. of Nursing, 896 F.2d 179, 182 (6th Cir.1990). Plaintiffs agree that the statute begins to run when “ ‘the plaintiff knows or has reason to know of the injury which is the basis of the action.’ ” Kovacic v. Cuyahoga Cnty. Dep’t of Children & Family Servs., 606 F.3d 301, 307 (6th Cir.2010) (quoting Kuhnle Bros., Inc. v. Cnty. of Geauga, 103 F.3d 516, 520 (6th Cir.1997)). What plaintiffs do dispute is what constitutes their injury in this case.
Plaintiffs argue that their injury in this case was not the sexual abuse at the hands of Berry. Rather, they argue that the injury occurred when information was revealed that demonstrated that they had a *15 cause of action against the LFUCG defendants, and that the statute of limitations on their claims against LFUCG did not commence until this information was revealed.
Plaintiffs argue that the district court erred by holding that the statute of limitations began running when the plaintiffs were abused, and not when they discovered that the defendants knew about and facilitated the abuse. Plaintiffs argue that because they are not suing Berry for injury, but rather LFUCG for its alleged policy or practice of not disclosing reports of Berry’s abuse and continuing to fund his program, the statute of limitations should not have started running until they discovered LFUCG’s policy or practice of not reporting Berry’s actions and continuing funding.
The plaintiffs argue that Kentucky’s delayed-discovery rule supports their position. The delayed-discovery rule states that “when an injury does not manifest itself immediately the cause of action should accrue not when the injury was initially inflicted, but when the plaintiff knew or should have known that he had been injured by the conduct of the tortfea-sor.” Louisville Trust Co. v. Johns-Manville Prods. Corp., 580 S.W.2d 497, 500 (Ky.1979). Delayed discovery has generally been applied to latent disease or medical-malpractice cases. See, e.g., id. at 498 (extending the doctrine from malpractice cases to a product-liability claim where a decedent had not exhibited cancer until years after asbestos exposure). Kentucky courts have noted that the delayed-discovery doctrine has been extended several times through statute, and have relied on this in refusing to extend the doctrine any further. See Fluke Corp. v. LeMaster, 306 S.W.3d 55, 60 & n. 7 (Ky.2010) (denying the application of the discovery rule in a personal-injury case); Rockwell Int’l Corp. v. Wilhite, 143 S.W.3d 604, 612-13 (Ky.Ct.App.2003) (declining to extend the doctrine to a property-damage action).
In keeping with courts’ reluctance to extend the doctrine, the delayed-discovery rule has been rejected in sexual-abuse cases, such as Roman Catholic Diocese v. Secter. 966 S.W.2d 286, 289-90 (Ky.Ct.App.1998) (noting that the General Assembly had not extended the rule and that injury from sexual abuse was not latent). In doing so, the Kentucky Court of Appeals noted that it had previously declined to extend the discovery rule in another factually similar case, Rigazio v. Archdiocese of Louisville, 853 S.W.2d 295 (Ky.Ct.App.1993). The Kentucky General Assembly has not extended the discovery rule to personal-injury or sexual-abuse cases, which is consistent with Kentucky courts’ reluctance to extend the doctrine to those areas.
Plaintiffs do not make a persuasive argument that the delayed-discovery rule should be applied to their case. Unlike an injury in an asbestos case or certain medical-malpractice cases, plaintiffs’ injury was immediately apparent and not latent. They attempt to restyle their injury as LFUCG’s failure to report Berry’s abuse, but this is simply not accurate — LFUCG’s failure to report Berry’s abuse would not be actionable had the plaintiffs not in fact been abused by Berry. Clearly Berry’s abuse is the injury that gives rise to plaintiffs’ claims. Plaintiffs do not claim that their injury by Berry was latent, nor was it. Plaintiffs knew they were injured, but they simply did not know that LFUCG might be liable for their injury. This makes their case fundamentally unlike a delayed-discovery case. The district court did not err in refusing to extend the delayed-diseovery rule to plaintiffs’ claims.
*16 B
The plaintiffs next make a series of es-toppel-based arguments, claiming that both the district court and the defendants are estopped from barring their claims on statute-of-limitations grounds. All of these arguments are meritless.
First, plaintiffs argue that the Sixth Circuit’s prior decision in Doe “thoroughly addressed” statute-of-limitations issues and that the court made it “unquestionably clear” that statutes of limitations would not bar plaintiffs’ claims on remand.
This argument fails. Even a moderately close reading of the Sixth Circuit’s opinion reveals that the court expressly declined to reach most of the statute-of-limitations issues. The court only held that statutes of limitations would be “considered as tolled from and after the filing of Guy.” Doe, 407 F.3d at 764. The court did not address the commencement of the statutes of limitations or whether any putative class members’ claims would be time-barred. The court did not opine on whether any particular plaintiff’s statute of limitations should be otherwise tolled. In fact, the court expressly declined to reach such issues, as foreshadowed by the following exchange at oral argument:
Judge Cole: You’re not asking that this court make any determination specifically as to when the statute of limitations accrued, just that we would reverse the District Court, send this back to the District Court ... ?
Mr. Morris [plaintiffs’ attorney]: That’s correct, Your Honor.
Plaintiffs misread the opinion when they argue that the court took a specific stance on statutes of limitations that became the “law of the case.” The Sixth Circuit only held that the limitations period for the Guy plaintiffs should be tolled from the time of the filing of Guy. The district court adhered to this holding on remand. There is no dispute as to whether it did so. Therefore, the district court adhered to the only law of the case that the Sixth Circuit created.
Plaintiffs next argue that the district court erred in failing to adhere to the mandate-rule doctrine. The mandate-rule doctrine states simply that “a district court is bound to the scope of the remand issued by the court of appeals.” United States v. Campbell, 168 F.3d 263, 265 (6th Cir.1999). The doctrine prevents the district court from enlarging its inquiry beyond those issues remanded. Ibid. The doctrine is construed in light of the fact, however, that remands can be quite general in scope. Ibid.
There is no evidence that in issuing Order # 255 the district court enlarged the scope of the remand in Doe. In Doe, the Sixth Circuit vacated the Guy order because it held that the court abused its discretion by not providing Rule 23(e) notice to class members. Doe, 407 F.3d at 763-64. It held that statutes of limitations would be considered tolled from the filing of Guy, but declined to decide whether statutes of limitation would be tolled by the filing of Doe I. Id. at 765. It remanded the case for the district court to consider the delayed-discovery-rule, equitable-tolling, and class-certification issues. Id. at 764-67. On remand, the district court has adhered to the Doe holding that statutes of limitation were tolled since the filing of Guy, and it has decided the tolling questions and the issue of class certification. Plaintiffs do not indicate how the district court has exceeded the scope of remand, nor is there evidence that the district court did so. Therefore, their argument that the district court violated the mandate-rule doctrine is without merit.
Plaintiffs next argue that the district court erred by making a statute-of-limita *17 tions ruling that contradicted its own previous ruling, thereby violating the “law of the case.”[3] Plaintiffs cite an order issued in the Doe I case issued after a new plaintiff, “John Doe II # 18,” sought to intervene and take part in the class settlement. Plaintiffs claim that the district court allowed his motion to intervene, over LFUCG’s objection, even though he did not file until almost four years after the claims were dismissed as time-barred in Guy. The intervention order has not been provided by plaintiffs. An appellant has a duty to point to the relevant parts of the record. United States v. Santiago, 135 Fed.Appx. 816, 828 (6th Cir.2005). Factual statements contained in a party’s brief are not part of the record. In re Frank Fehr Brewing Co., 268 F.2d 170, 183 (6th Cir.1959). In any case, however, it is clear that the order to which plaintiffs refer is an interlocutory order from the Doe I class action. An interlocutory order can be changed before the district court reaches a final judgment; therefore, a court is not estopped from acting contrary to its own interlocutory order, and an interlocutory order cannot create the law of a case. See, e.g., In re Life Investors Ins. Co., 589 F.3d 319, 326 n. 6 (6th Cir.2009).[4] For these reasons, plaintiffs’ argument must fail.
Plaintiffs next argue that the defendants should have been barred by judicial estop-pel from asserting a statute-of-limitations argument in the district court. They provide two reasons: LFUCG’s arguments regarding statutes of limitations had previously failed, and LFUCG had repeatedly stated that the statute of limitations did not start running within one year of the filing of Guy.
The equitable doctrine of judicial estop-pel “bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition.” Lorillard Tobacco Co. v. Chester, Wilcox & Saxbe, LLP, 546 F.3d 752, 757 (6th Cir.2008) (internal quotation marks omitted). Judicial estoppel is applied cautiously, so such a later position “must be clearly inconsistent” with the party’s previous position. Ibid, (internal quotation marks omitted). In support of their argument, plaintiffs refer to two orders that were filed by defendants and to defendants’ briefing for the Sixth Circuit Doe appeal. Plaintiffs argue that in these documents the defendants stated that the “triggering event” for statutes of limitations was on November 20, 1997, when a newspaper article tying LFUCG to Berry’s Micro-City Government was published. If November 20, 1997, was the trigger, the filing of Guy, on October 15, 1998, would be less than one year from this date, and plaintiffs’ claims would not be barred by the one-year statute of limitations.
*18 The primary problem with plaintiffs’ argument is that, even if defendants made inconsistent arguments in these orders, which they contest on appeal (by arguing that they stated that November 20, 1997 was the latest date possible for any tolling, rather than for the accrual, of claims), the district court did not adopt such inconsistent argument. The district court has consistently held that plaintiffs’ claims accrued at the time of their injury by Berry. Therefore, the second part of the judicial-estoppel test is not met, and plaintiffs’ judicial-estoppel claim fails.
C
Plaintiffs finally argue that even if the statute of limitations accrued when they were injured by Berry, and even if the court and defendants are not estopped from relying on this statute of limitations, equitable tolling should operate to extend their statutes of limitations. Plaintiffs argue that grounds exist to toll the statute of limitations from the time their cause of action accrued until they knew that LFUCG failed to report Berry’s abuse and continued funding Micro-City despite knowledge of his abuse.
On remand from the Sixth Circuit decision in Doe, the district court made two rulings regarding tolling. First, the district court tolled the statutes of limitation for claims by putative class members against LFUCG from the time of Guy’s filing — October 15, 1998 — as ordered by the Sixth Circuit in Doe. The district court tolled the statutes of limitations only for claims against LFUCG (and not the individual defendants), because LFUCG was the only defendant in Guy. See, e.g., Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp., 413 F.3d 553, 567-68 (6th Cir.2005) (holding that tolling does not apply to additional defendants who were not named in the class action). Second, the court tolled the statutes of limitations from the time of the filing of Doe I—May 13, 2000—for claims filed against the ten individual defendants named in that class action. Likewise, this tolling only applied to claims made against the defendants in Doe I.
The district court did not apply any other tolling doctrines to plaintiffs’ claims. In this appeal, plaintiffs argue that the district court erred in refusing to apply equitable tolling based on LFUCG’s “fraudulent concealment.” Plaintiffs’ fraudulent-concealment argument is not meritless. However, plaintiffs’ claims would be time-barred even if tolling based on fraudulent concealment were applied. Therefore, any error the district court may have committed in refusing to apply equitable tolling based on fraudulent concealment was harmless.
The parties agree that a federal court must borrow state statutes of limitations and tolling rules in a § 1983 action. See Bd. of Regents v. Tomanio, 446 U.S. 478, 484, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980) (“In § 1983 actions ... a state statute of limitations and the coordinate tolling rules are ... [i]n most cases ... binding rules of law.”). Kentucky has a relevant tolling statute, which reads as follows:
When a cause of action ... accrues against a resident of this state, and he by absconding or concealing himself or by any other indirect means obstructs the prosecution of the action, time of the continuance of the absence from the state or obstruction shall not be computed as any part of the period within which the action shall be commenced.
Ky.Rev.Stat. ANN. § 413.190(2). Kentucky courts have also held, however, that Kentucky’s tolling statute is a “recognition in law” of general equitable estoppel; therefore, case law regarding equitable estoppel is also relevant. Golden Oak Mining Co. v. Lucas, No. 2008-CA-002148-MR, 2011 *19 WL 2416600, at *7 (Ky.Ct.App. June 17, 2011) (internal quotation marks omitted) (quoting Munday v. Mayfair Diagnostic Lab., 831 S.W.2d 912, 914 (Ky.1992)). The essential elements of equitable estoppel, sometimes also called “fraudulent concealment,” are:
(1) conduct which amounts to a false representation or concealment of material facts, or at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently seeks to assert, (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question, (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.
Id. at *8 (quoting Fluke Corp., 306 S.W.3d at 63).
In Seder, a factually similar case in which the plaintiff succeeded in making a fraudulent-concealment argument, the court affirmed the trial court’s denial of the Diocese’s motion for a directed verdict on statute-of-limitations grounds after the Catholic Diocese of Covington, Kentucky, failed to report incidents of sexual abuse by a counselor to the authorities, concealed secret files with information about the abuse, and failed to inform students, faculty, and staff of the facts. Secter, 966 S.W.2d at 289-90. The Diocese argued that concealment alone was not enough to toll the statute; the concealment had to actually deceive or mislead the potential plaintiff. Ibid. The court held that the Diocese had “clearly obstructed” Secter’s ability to bring a claim against it by concealing its knowledge of the counselor’s abuse and the reports brought against him. Ibid. The court also emphasized that the Diocese had a legal duty to bring reports of child abuse to law enforcement, and that violating this legal duty constituted evidence of concealment under the Kentucky tolling statute. Ibid. (citing Ky.Rev. Stat. Ann. § 413.190(2)).
Subsequent Kentucky cases have continued to recognize Secter, but are arguably less liberal in applying fraudulent concealment. In sexual-abuse cases factually similar to this case, the Kentucky Court of Appeals has, while recognizing the validity of the Secter holding, narrowed its application to situations where a plaintiff exercised reasonable care and diligence in pursuing a cause of action. Greywolf v. Roman Catholic Diocese of Covington, No. 2010-CA-000814-MR, 2011 WL 3361342, at *3 (Ky.Ct.App. Aug. 5, 2011). Greywolf held that, to toll the statute, a defendant’s concealment “must hide the plaintiffs cause of action in such a manner that it cannot be discovered by the exercise of ordinary diligence.” Ibid. The court held that media reports implicating the diocese put the plaintiff on constructive notice of its negligent hiring and entrustment, and that the plaintiff could not “remain oblivious to a cause of action when information was available that it existed” media reports are commonly held to end any period of fraudulent concealment. Ibid.; see also Moyers v. Roman Catholic Bishop, No. 2004-CA-001886-MR, 2005 WL 3116116, at *3 (Ky.Ct.App. Nov. 23, 2005); Azerot v. Roman Catholic Bishop, No. 2004-CA-000666-MR, 2005 WL 2899483, at *1 (Ky.Ct.App. Nov. 4, 2005) (holding that sexual-abuse victims *20 were no longer entitled to tolling once widespread publicity revealed affiliations between the abuser and the organization they sought to hold liable). Further retreating from per se findings of fraudulent concealment, Kentucky courts have stated that violation of a legal duty to report does not necessarily lead to a finding of fraudulent concealment, but is only a factor in the analysis. Anderson v. Bd. of Educ. of Fayette Cnty., 616 F.Supp.2d 662, 671 (E.D.Ky.2009) (stating that a defendant’s violation of Ky. Rev. Stat. Ann. § 418.190(2) did not necessarily prove fraudulent concealment). Finally, Kentucky courts have emphasized that plaintiffs are expected to make a diligent investigation of their claim. Golden Oak, 2011 WL 2416600, at *9 (refusing to find fraudulent concealment when landowners’ well-water was tainted by a mining company that misrepresented itself to plaintiffs and failed to report accurate information).
In plaintiffs’ case, even if there were a valid argument that LFUCG or its officials engaged in fraudulent concealment, the parties agree that there was local, widespread publicity surrounding LFUCG’s connection with Micro-City Government in 1997. At least two newspaper articles were published in the Lexington Herald-Leader describing the affiliation between LFUCG and Micro-City Government in 1997, one on August 29 and one on September 18. The articles stated that civic groups believed that LFUCG was arguably required to have investigated claims of Berry’s improper activity because Micro-City was funded locally for so many years. As in Greywolf Moyers, and Azerot, any fraudulent concealment claim cognizable by the plaintiffs would have ended by the time they was put on constructive notice by these two newspaper articles. Therefore, the latest fraudulent concealment would toll the commencement of plaintiffs’ statutes of limitations would be September 13, 1997. However, plaintiffs filed their complaint on October 15, 1998, more than a year after the newspaper articles putting them on notice were published. This means that plaintiffs’ claims, unless they had another tolling right, such as infancy, would still be time-barred. A finding of fraudulent concealment simply would not help to preserve any of plaintiffs’ claims. For these reasons, the district court did not err in refusing to apply equitable tolling doctrines to plaintiffs’ claims.
Order # 282
Defendants-appellees raise a single issue on appeal. They argue that the district court erred in Order # 382 when it allowed three plaintiffs to go forward with their claims against the individual defendants named in the Doe I class action. Defendants argue that the court was wrong to apply class-action tolling to Doe I, because class-action tolling cannot be applied to any class action filed by a putative class other than the first class action filed by that class. Defendants are incorrect, and we affirm the district court’s holding that plaintiffs’ claims against the individual defendants in Doe I were tolled from the time of filing of Doe I.
The commencement of a class action tolls the applicable statute of limitations for all unnamed members of the class until certification is denied or the case is otherwise dismissed without being certified. American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 552-53, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); Crown, Cork & Seal Co., 462 U.S. at 354-55, 103 S.Ct. 2392 (extending American Pipe’s tolling of the statute of limitations to those bringing individual actions after class certification is denied and those electing out of the class action to bring individual claims). The defendants *21 argue that the Sixth Circuit has since held, though, that this “class-action tolling” only applies to the first class action filed on behalf of a putative class, citing in support of their argument Wyser-Pratte Mgmt. Co., 413 F.3d 553, 567-68 (6th Cir.2005); Weston v. AmeriBank, 265 F.3d 366, 368 (6th Cir.2001);[5] and Andrews v. Orr, 851 F.2d 146, 148-49 (6th Cir.1988). The defendants have misread our holdings on this point.
Wyser-Pratte holds that the tolling of limitations periods against a defendant by a class action would not apply to a subsequent action against a different defendant, even if the claims arise out of the same or a similar transaction. Wyser-Pratte, 413 F.3d at 568. In short, the tolling caused by the filing of one putative class action cannot toll statutes of limitations for claims against a different defendant in a second putative class action. Similarly, Andrews held that “the pendency of a previously filed class action does not toll the limitations period for additional class actions by putative members of the original asserted class.” Andrews, 851 F.2d at 149. In other words, filing one class action will not toll the statutes of limitations on all the claims or class actions a -putative class member might have; it only tolls the claims asserted in the filed class action. These holdings are consistent with the district court’s Order # 255 in this case. The district court did not hold that claims against defendants named in Doe I, the second class action filed, were tolled from the time of the filing of Guy, the first class action. Such a holding would have run afoul of Wyser-Pratte and Andrews. Instead, the district court held that claims against the defendants named in Doe I were tolled from the time of filing of Doe I. The district court also held that claims against the defendants named in Guy were tolled from the time of filing of Guy. The district court merely applied class-action tolling to the two separate class actions, treating them as what they were — separate class actions, filed by different plaintiffs against different defendants. This treatment is wholly consistent with our holdings, and with the policy underlying these holdings. The district court’s tolling of claims against the Doe I defendants from the time of the Doe I filing was not error.[6]

Order # Ull

In the final issue on appeal, plaintiffs argue that the district court erred when it issued Order #411 denying their motion for class certification. We review a district court’s grant or denial of class certification for an abuse of discretion. United Steelworkers of Am. v. Cooper Tire & Rubber Co., 474 F.3d 271, 277 (6th Cir.2007). Recognizing the considerable discretion *22 the district court has in determining whether to certify a class, we defer to the district court’s determination if the court applies the proper standard and if the court’s decision falls within the bounds of rationally available choices given the facts and law involved in the matter. Miami Univ. Wrestling Club v. Miami Univ., 302 F.3d 608, 613 (6th Cir.2002). Plaintiffs in this case seek certification for a Rule 23(b)(3) class action; therefore, they must satisfy the four requirements of Rule 23(a) as well as the test of Rule 23(b). Sprague v. Gen. Motors Corp., 133 F.3d 388, 397 (6th Cir.1998).
Federal Rule of Civil Procedure 23(a) establishes four prerequisites for class certification: (1) numerosity of parties, (2) commonality of legal and factual issues, (3) typicality of claims and defenses of the class representatives, and (4) adequacy of representation. A class must satisfy all four before it can be certified. See 5 James Wm. Moore et al„ Moore’s Federal Practice § 23.20 (3d ed.2008). In this case, the district court found that plaintiffs lacked the requisite numerosity because only four class members’ claims were not time-barred with regard to LFUCG, and only three were not time-barred with regard to the individual defendants. A class of twenty or fewer is usually insufficiently numerous. 5 Moore’s Federal Practice at § 23.22(l)(b). We hold that the district court did not abuse its discretion in finding that plaintiffs’ putative class failed on numerosity grounds. Therefore, we affirm Order # 411, denying class certification.[7]

Conclusion

For the foregoing reasons, we AFFIRM the district court’s Orders # 255, # 382, and # 411.

. Federal Rule of Civil Procedure 23(e) provides:
Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement ...
(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal....

. Federal Rule of Procedure 60(b) provides:
Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
(4) the judgment is void[.]

. The law-of-the-case doctrine provides that “ 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.’ ” Scott v. Churchill, 377 F.3d 565, 569-70 (6th Cir.2004) (quoting Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)).

. For example, defendants in the Doe I case could have brought a motion to reconsider the ruling pursuant to Federal Rule of Civil Procedure 54(b). See Fed.R.Civ.P. 54(b) (stating that "any order or other decision, however designated, that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties’ rights and liabilities.”); see also Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 Fed.Appx. 949, 959 & n. 7 (6th Cir.2004) (discussing a court's options for reconsidering an interlocutory order).

. Weston holds that the statute will not be tolled for state-law claims that could have been brought, but were not, in the original complaint. Weston, 265 F.3d at 368-69. Because defendants’ argument addresses tolling claims against different defendants, and not state or federal claims, Weston is not on point.

. It is true that Doe I was dismissed and tolling usually applies only from the time a putative class action is filed until the time it was dismissed. Crown, Cork, 462 U.S. at 353-54, 103 S.Ct. 2392. However, Doe I was dismissed because the named plaintiffs settled and Rule 23(e) notice was not sent to the putative class members. The Sixth Circuit in the Doe decision declined to vacate the Doe I judgment because to do so would disturb the Doe I settlement, which was contingent upon dismissal. Doe, 407 F.3d at 764. Because Rule 23(e) notice was not sent to the putative class members, and the Sixth Circuit held that this was error (only declining to vacate Doe I to preserve the settlement of the named plaintiffs), it would be inequitable to deny putative class members in Doe I class-action tolling. We do not believe the court envisioned this result when it declined to vacate Doe.

. The district court further found that, even if putative class members were sufficiently numerous to justify a class action, plaintiffs’ claims lacked the required commonality of legal and factual issues. We need not reach this issue.